[No. A089185. First Dist., Div. Three. Feb. 28, 2001.]

AMERICAN CEMWOOD CORPORATION et al., Plaintiffs and Appellants, v.
AMERICAN HOME ASSURANCE COMPANY et al., Defendants and Respondents.

432

## COUNSEL

Heller Ehrman White & McAuliffe, Paul W. Sugarman, David B. Goodwin, Monika P. Lee and Benjamine D. Brown for Plaintiffs and Appellants.

Coddington, Hicks & Danforth, Randolph Steven Hicks; Simpson, Thacher & Bartlett, Barry R. Ostrager and Mary Kay Vyskocil for Defendants and Respondents.

## OPINION

**CORRIGAN, J.**—In this case we consider whether a defendant seeking to stay or dismiss an action on the basis of forum non conveniens must show that all defendants are subject to jurisdiction in the proposed alternate forum. We hold that, on the facts presented here, such a showing is required.

### Background

Appellant American Cemwood Corporation (American Cemwood) is an Oregon corporation. In 1993, the company was acquired by appellant MacMillan Bloedel (USA) Inc., a wholly owned subsidiary of MacMillan Bloedel Limited (MacMillan Bloedel), a Canadian corporation.[1]

At the core of this insurance dispute are defective roofing tiles manufactured by American Cemwood between March 1987 and April 1998. By 1999, over 7,000 claims for damages caused by defective tiles had been filed against the company.

---

[1]For convenience, we shall refer to American Cemwood and MacMillan Bloedel jointly as Appellants.

## I. *The Insurance Policies*

Between 1989 and its 1993 acquisition by MacMillan Bloedel, American Cemwood was insured by three insurers: Travelers Casualty & Surety Co. (Travelers), a Connecticut corporation; Reliance Insurance Co. (Reliance), a Pennsylvania corporation; and North Pacific Insurance Co. (North Pacific), an Oregon corporation.

From 1993 through 1998 American Cemwood was insured by respondent American Home Assurance Company (American Home) under primary and excess policies purchased by MacMillan Bloedel for itself and its subsidiary and affiliated companies. Respondent Commerce & Industry Insurance Company (C&I) underwrote a portion of MacMillan Bloedel's excess coverage from December 31, 1992, to December 31, 1993. Both American Home and C&I are New York corporations headquartered in New York.

## II. *The Lawsuits*

On August 2, 1999, Appellants filed this action against the five insurers whose primary and excess policies it alleges are implicated by the roofing tile claims: American Home, C&I, Travelers, Reliance, and North Pacific. The action sought a declaration of these carriers' obligations with respect to the roofing tile claims and, from certain defendants, damages for breach of the duties to defend and indemnify and of the implied covenant of good faith and fair dealing.

On August 3, 1999, American Home, C&I and Commerce & Industry of Canada (C&I of Canada) filed suit against Appellants in the Supreme Court of British Columbia.[2] Like the California action, this suit concerned issues of primary and excess insurance coverage for claims arising from American Cemwood's roofing products. Specifically, the British Columbia action sought declaratory relief concerning the insurers' indemnity and defense obligations; a declaration that two renewal policies issued after 1994 were void due to alleged misrepresentations by Appellants concerning the roofing tile claims; and, in addition, declaratory relief concerning a coverage dispute, not involving American Cemwood, over allegedly defective composite siding manufactured by MacMillan Bloedel and/or other of its wholly owned subsidiaries.

The British Columbia suit concerns only policies issued by American Home and C&I. American Cemwood's three other primary insurers, defendants in the California action, are not parties.

---

[2]The parties had earlier entered into an agreement that neither side would file suit before Sunday, August 1, 1999. Because August 2, 1999, was a Canadian national holiday, both sides filed their actions on the first day possible after the tolling agreement expired.

### III. *The Proceedings in California*

American Home and C&I (jointly Respondents) moved to dismiss or stay the California action in favor of the British Columbia action under a theory of forum non conveniens. The court ordered the action stayed subject to defendants' agreement to toll the statute of limitations. This appeal timely followed.

### *Discussion*

### I. *Forum Non Conveniens*

█ Forum non conveniens, codified in California at Code of Civil Procedure section 410.30,[3] is "an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14] (*Stangvik*).) " 'Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true.' [Citation.] A principal reason for not exercising jurisdiction, recognized by state and federal courts, is that the forum is not convenient. This doctrine, Latinized in the rubric 'forum non conveniens,' has a long history. [Citation.] It was crystallized by our national court in *Gulf Oil Corp.* v. *Gilbert* (1947) 330 U.S. 501 [91 L.Ed. 1055, 67 S.Ct. 839] . . . , and by the California court in *Price* v. *Atchison, T. & S.F. Ry. Co.* (1954) 42 Cal.2d 577, 580 [268 P.2d 457, 43 A.L.R.2d 756]. [¶] The principle 'is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.' [Citation.]" (*Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 706-707 [46 Cal.Rptr.2d 888].)

The availability of a suitable alternative forum for the action is critical. As noted by the United States Supreme Court: "In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." (*Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. 501, 506-507 [67 S.Ct. 839, 842], italics omitted.)

---

[3]Unless otherwise indicated, all statutory citations are to the Code of Civil Procedure. Section 410.30 states in relevant part: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (§ 410.30, subd. (a).)

## II. *Legal Standards*

"In assessing a forum non conveniens motion the trial court looks first to whether the alternative forum is a suitable place for trial. [Citation.] If it is then the court looks to the private interests of the litigants and the public interest in keeping the case in California. [Citation.]" (*Century Indemnity Co. v. Bank of America* (1997) 58 Cal.App.4th 408, 412 [68 Cal.Rptr.2d 132], citing *Stangvik, supra,* 54 Cal.3d 744.)

The balancing of private and public interests is a task squarely within the trial court's discretion. (*Stangvik, supra,* 54 Cal.3d at pp. 751-752.) Nonetheless, Respondents err in asserting that the granting or denial of a forum non conveniens motion is entirely discretionary. As noted in *Stangvik,* the analysis is twofold. "In determining whether to grant a motion based on forum non conveniens, the court first must make a threshold determination whether the alternate forum is a suitable place for trial. [Citations.] *This is a nondiscretionary determination.* [Citation.]" (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1036 [68 Cal.Rptr.2d 427] (*Chong*), italics added; *Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 132 [6 Cal.Rptr.2d 38] (*Shiley*).) Indeed, in *Stangvik* the Supreme Court expressly rejected defendants' suggestion that the suitability of the alternative forum is part of the discretionary determination of the balance of conveniences.[4] (*Stangvik, supra,* 54 Cal.3d at p. 752, fn. 3.) Only if it finds the alternative forum suitable does the court proceed to the discretionary exercise of balancing the private interests of the litigants and the interests of the public in retaining the action in California. (*Chong, supra,* at p. 1037.) In assessing suitability, however, "There is no balancing of interests in this decision, nor any discretion to be exercised." (*Shiley, supra,* at p. 132.) We therefore review the legal question before us de novo.

With these standards in mind, we turn first to whether respondents satisfied the threshold requirement of a suitable alternative forum.

## III. *Suitability of the Alternative Forum*

"Because the threshold inquiry regarding the suitability of alternative forum is so critical to how a forum non conveniens motion to dismiss will be resolved, a number of cases following *Stangvik* have dealt with the question regarding what exactly makes an alternative forum suitable or unsuitable."

---

[4]*Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1541 [82 Cal.Rptr.2d 202], which Respondents cite for the abuse of discretion standard, correctly applies that standard only in the context of the balance of conveniences step of the analysis.

(Comment, *Stangvik v. Shiley and Forum Non Conveniens Analysis : Does a Fear of Too Much Justice Really Close California Courtrooms to Foreign Plaintiffs?* (2000) 13 Transnat'l Law. 175, 217 (hereafter *Forum Non Conveniens Analysis*).) As a general matter, a forum is suitable "if there is jurisdiction and no statute of limitations bar to hearing the case on the merits. [Citation.] '[A] forum is suitable where an action "can be brought," although not necessarily won.' [Citation.]" (*Chong, supra,* 58 Cal.App.4th at pp. 1036-1037.)

The narrow question here, not answered by these settled principles, is whether the moving defendant must show that there is an alternative forum that has jurisdiction over *all* of the defendants. Respondents say no. Under their view, forum non conveniens is appropriate here because, while all defendants may not be subject to jurisdiction in British Columbia, they can each be sued in separate actions brought in different states. The point is critical here, as Respondents did not establish below that all of the California defendants are subject to jurisdiction in British Columbia.[5] Appellants, on the other hand, assert that forum non conveniens is not available unless all defendants in the California action can be compelled to litigate in British Columbia.

As a starting point, we note that the statutory language at least suggests that a suitable alternative forum is one in which the plaintiff may sue all of the properly named defendants. Section 410.30 speaks to whether the plaintiff should be required to bring its "action," not its claims against some particular defendant or defendants, in "*a forum* outside this state." (Italics added.) Carrying the same theme, the Judicial Council comment to section 410.30 contemplates that "a suitable alternative forum" must be available to the plaintiff: "[T]he action will not be dismissed unless *a* suitable alternative forum is available to the plaintiff [citations]." (Judicial Council of Cal., com., reprinted at 14 West's Ann. Code Civ. Proc. (1973 ed.) foll. § 410.30, p. 492, italics added.) While this language is not dispositive, it is difficult to reconcile with Respondents' supposition that they need only show that plaintiffs can separately pursue their claims against different defendants in various different jurisdictions.

The two California cases to have directly addressed this issue, *Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 758 [59

---

[5]Their only evidence on this point was a declaration by counsel on information and belief that Travelers, North Pacific and Reliance "are either subject to or may consent to" jurisdiction in British Columbia.

Cal.Rptr.2d 229] and *Northrop Corp. v. American Motorists Ins. Co.* (1990) 220 Cal.App.3d 1553 [270 Cal.Rptr. 233] (*Northrop*), have done so under different circumstances and with different resolutions. The first California case to weigh in, *Northrop* states that a showing that all defendants could be sued in the alternative forum is "effectively a precondition for even considering stay or dismissal based on inconvenient forum." (*Northrop*, at p. 1563.) Although the court stated this principle in dictum, in the context of reviewing a trial court's discretionary weighing of private and public interests, it followed a well-trodden path in doing so. ■ This principle is firmly established in federal forum non conveniens law, which both the California and United States Supreme Courts have recognized is "virtually identical" to California law. (*Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 248, fn. 13 [102 S.Ct. 252, 262, 70 L.Ed.2d 419]; *Stangvik, supra,* 54 Cal.3d at p. 754, fn. 6; see Comment, *Considerations of Choice of Law in the Doctrine of Forum Non Conveniens* (1986) 74 Cal.L.Rev. 565, 581.)

■ Under federal law, "[P]rior to balancing the public and private interests enunciated in *Gulf Oil,* a court must decide whether another adequate forum is available to hear the case because the doctrine of forum non conveniens presupposes the existence of at least two forums in which *all* defendants are amenable to process." (*In re Air Crash Disaster Near New Orleans, La.* (5th Cir. 1987) 821 F.2d 1147, 1163-1164, italics added.) The above court thus ruled forum non conveniens inapplicable because the moving defendant did not show that all defendants were amenable to jurisdiction in the alternative forum. (*Id.* at pp. 1168-1169; see also *Madanes v. Madanes* (S.D.N.Y. 1997) 981 F.Supp. 241, 265-266; *Jota v. Texaco, Inc.* (2d Cir. 1998) 157 F.3d 153, 159; *Kamel v. Hill-Rom Co., Inc.* (7th Cir. 1997) 108 F.3d 799, 803; *Watson v. Merrell Dow Pharmaceuticals, Inc.* (6th Cir. 1985) 769 F.2d 354 (*Watson*).) Applying this principle, the court in *Watson* reversed a dismissal under forum non conveniens. While moving party Merrell Dow had consented to jurisdiction in the alternative forum, it failed to show that the individual defendants were likewise subject to suit there. Even if the major, or "primary," defendants can be sued in the proposed alternative forum, the *Watson* court held, the moving party must show that all other defendants, whether or not as central to the litigation, are subject to its jurisdiction as well. (*Watson,* at p. 357.)

This rule makes sense. The court's discretion to decline to exercise its authorized jurisdiction over an action for considerations of convenience is limited by the proviso that another forum must be available for the plaintiff's action. A rule permitting a stay or dismissal of an action over which no

single alternative court could exercise jurisdiction would force the plaintiff to pursue separate actions in multiple states or countries to obtain complete relief. Such a rule, by encouraging piecemeal litigation and blossoming numbers of actions in multiple jurisdictions, would threaten precisely those considerations of convenience, economy and justice the doctrine was designed to bolster. (See *Forum Non Conveniens Analysis, supra,* 13 Transnat'l Law. at pp. 180, 182-184; *Koster v. Lumbermens Mutual Co.* (1947) 330 U.S. 518, 527 [67 S.Ct. 828, 833, 91 L.Ed. 1067].) It would also encourage the tactical use of forum non conveniens motions, not for valid reasons of public and private convenience, but to overburden plaintiffs with the difficulty and expense of litigating on multiple fronts. In short, we think Respondents' position comports neither with the language of our statute nor its purposes. Absent persuasive authority or arguments to the contrary, we find the federal rule to be the better reasoned.

## IV. *Hansen Does Not Support Defendants' Position*

Respondents rely on *Hansen v. Owens-Corning Fiberglas Corp., supra,* 51 Cal.App.4th 753 (*Hansen*), for their position that a moving defendant need not show that all defendants are subject to jurisdiction in the same alternative forum. *Hansen,* however, is inapposite.

*Hansen* was a personal injury asbestos action against 200 defendants. Owens-Corning brought motions to dismiss or stay the California proceedings under forum non conveniens. The court granted the stay motions and directed that the plaintiff could seek to have the stay lifted if, after filing suit in Montana, he could conclusively show that Montana was not a suitable alternative jurisdiction.

On appeal, Hansen contended the trial court erred because Owens-Corning had failed to show that three of the other defendants were subject to jurisdiction in Montana. The Court of Appeal disagreed. First, it noted, the trial court had merely stayed the action pending a determination that all defendants were subject to jurisdiction in Montana. Were it to be determined in Montana that they were not, the plaintiff could return to court in California and request that the stay be lifted. (*Hansen, supra,* 51 Cal.App.4th at pp. 756-757, 758.) Second, the court correctly observed that neither of the two cases cited by the plaintiffs for their position, *Stangvik, supra* 54 Cal.3d 744, and *Boaz v. Boyle & Co., supra,* 40 Cal.App.4th 700, stated or implied that

all defendants must be subject to jurisdiction in the alternative forum for forum non conveniens to apply. (*Hansen, supra,* at pp. 758-759.) Finally, the court explained that "[i]n asbestos cases such as this, where there are 200 named defendants, it is unreasonable to expect the moving defendant to prove *all* defendants are subject to jurisdiction in a particular alternative forum." (*Id.* at p. 759, italics in original.)

This is not such a case. In contrast to *Hansen,* it involves but five defendants. Plainly, then, it would not be unreasonable here to expect Respondents to prove the three other defendants are subject to jurisdiction in a particular alternative forum.

Nor are the other circumstances stressed in *Hansen* present here. The order in this case does not contemplate, as in *Hansen,* that the tenure of the forum non conveniens stay would depend on Appellants' ability to establish in British Columbia that not all of the defendants are subject to its jurisdiction. Put differently, the court here did not simply stay the action pending a determination in British Columbia of that court's jurisdiction over all defendants.[6] Finally, in *Hansen* the defendants apparently did not raise, and, hence, the Court of Appeal was under no obligation to research and address, the federal view of forum non conveniens requiring an alternative forum in which *all* defendants are subject to jurisdiction. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 594-596, pp. 627-630.) Given the narrow and specific context within which *Hansen* was decided, it is not surprising that no other courts, in this state or elsewhere, have cited it as support for Respondents' broader interpretation of the suitable forum requirement.

## V. *Summary*

In keeping with the language of California's forum non conveniens statute, Judicial Council commentary, the policies underlying the doctrine, and the persuasive authority from our federal counterparts, we hold that Respondents' failure to demonstrate that all defendants are subject to jurisdiction in British Columbia precludes application of forum non conveniens. Accordingly, the court erred in granting Respondents' motion to stay.

---

[6]Because that issue is not presented here, we express no opinion as to whether such a conditional stay would pass muster on facts different than those in *Hansen.*

*Disposition*

The order granting a stay is reversed and the matter is remanded to the trial court for further proceedings. All parties are to assume their own appellate costs.[7]

McGuiness, P. J., and Parrilli, J., concurred

Respondents' petition for review by the Supreme Court was denied May 16, 2001. Kennard, J., was of the opinion that the petition should be granted.

---

[7]Plaintiffs' request that this court take judicial notice of a procedural ruling by the Supreme Court of British Columbia is denied because it is irrelevant to the narrow issue at hand. "Although a court may judicially notice a variety of matters (Evid. Code, § 450 et seq.), only *relevant* material may be noticed." (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73], italics in original.)